May it please the Court, Mike Valake on behalf of United Technologies Corporation and I have with me Patrick Coyne from the Finnegan-Henderson. The Board erred here below in construing the term stability margin, which is a term of art in the aerospace industry and we ask this Court to give stability margin its ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art. In a sense this appeal is unique in that it's undisputed, GE agrees that stability margin means exactly what UTC says. That's right. So that's not really the issue about what stability margin means. I think what the issue is, you can tell me why I'm wrong, is whether or not you have to do, whether it requires a calculation. And that is the issue, Your Honor, and if we construe stability margin, if we give it meaning, you have to do a calculation, you have to make a determination because the industry standard definition for stability margin is you have this on a fan map, a stability limit line, and then stability margin is defined as the pressure ratio on the stability limit line down to the fan pressure ratio at the operating point. And so it's a subtraction. The term itself is, the claim itself talks about determining the undesired stability margin, right? Yes, Your Honor. We're talking about an undesired stability margin. So the question is, what does detecting that mean? And the Board said, well, detecting it means whether conditions that may lead to instability are present. So taking everything you say about this industry understood definition of stability margin, et cetera, et cetera, why is the Board wrong in the context of this claim to not construe the undesired stability margin in a kind of broader, more fluid way? Because that's indeed one of the Board's errors, and particularly with respect to Claim 15, Wheat's admit they rewrote the claim, quoting the Board, it says, quote, the claims are similarly devoid of any express language requiring that a stability margin be numerically calculated. Is that true? The claims themselves don't literally say it needs to be numerically calculated. If we construe stability margin, though consistent with Figure 3 in the specification, it does need to be numerically calculated. But then the Board went on to say, rather, they simply require detecting conditions that may lead to instability are present. We submit, Your Honors, that the claim says. I mean, it says detect from these four different things, at least one of which doesn't require any kind of calculation, and then determine the undesired margin from that detecting step. I mean, if you're determining the undesired margin from that detecting step, then several of those don't require a calculation. If you take from the detecting step, which is the. Well, that's what the claim language says, right? That's exactly what it's. You determine the undesired margin from the steps outlined in the detecting step. And the detecting step doesn't necessarily require a calculation. If the detecting step says detecting at least one of a turbofan pressure ratio, low spool speed, airflow direction, and throttle position, and that's inclusive. It needs to have one of those to meet the first part of the method claim limitation here in detecting. But just using that information alone, you can't determine what the stability margin is whatsoever. Indeed, both experts, when they were asked. Well, wait, what does it mean? I mean, maybe I'm looking at the wrong site. Doesn't the determining step need, say, determining the undesired stability margin from the detecting step? So the only answer to how do you determine it is the detecting step. And the detecting step says at least one. I guess I'm having the same confusion or problem that Judge Hughes seems to be I think the language is quite precise and clear. Well, to me, focusing on claim 15 alone and to meet that specific limitation, you would need one of those. But you have to look at the specification to give this meaning. The reason that those parameters there in the first step of claim 15 are important and why one of those might affect your stability margin is they're going to move your operating point. And what your operating point is is where that fan is in flight. And so we submit, Your Honor, focusing solely on just claim 15, that it doesn't mean that based on one of those conditions alone, aha, you would have stability margin. Indeed, we ask each of the experts here, if you simply know airflow direction, just airflow direction, do you know what the stability margin is? And the answer is no. You have no idea what the stability margin is. So you think claim 15 means the determining step means determining from the detecting step or from other information not recited in this claim? From other information that is not specifically recited in the first step. So that's what from the detecting step means from the detecting step except predominantly from something other than what's listed in the detecting step. Well, if you look at the detecting step, the first thing is the turbofan pressure ratio. And so if you know the turbofan pressure ratio and you combine it with looking at the fan map that's shown in figure three in the specification, then you can look exactly where your operating point is. You can look at it in relation to the stability limit line, and you can calculate your stability margin. Fair enough. I mean, I'm not going to question you on that, but the claim says detecting at least one. So that's one, but that's not required by the detecting step, right? It could be any of the four. It could be any of the four. So it's not limited by any means to the pressure ratio. But, Your Honor, the person of ordinary skill in looking at claim 15 would read that claim along with the specification. The person of ordinary skill would know full well exactly what stability margin means because it's shown very consistently with what's an industry standard definition in figure three with that vertical line, that fan stability margin. So when the person of ordinary skill has that understanding and knows full well what stability margin is, when that person reads claim 15, not reading it literally as we're reading it right now from the detecting step alone, that doesn't alter the definition to a person of ordinary skill. They understand that what the controller's doing is using one of those parameters in its calculation of the stability margin along with what else is required to determine what a stability margin is. So if we look at claim 15 simply in a vacuum, I understand Your Honor's questions of why from the detecting step could literally mean just one of these things. But again, that's why we asked the experts who knew full well exactly what the specification, as well as they know one of those parameters alone is not enough. Well, is it one thing to look at the parameter and other parameters, or that may be one thing? Does the only way you can look at those require a numerical calculation, which is essentially what you're asking for? Part and parcel to each one of those, it would be a numeric, that would be a number, if you will. The patent is clear that you have these sensors. You have a throttle position sensor, you have a low-speed spool sensor. And so those parameters there in claim 15, that's feeding information into that controller. The controller also has other information, and therefore, using all of that information, it can go ahead and calculate a stability margin. The other part of claim 15, we should also look at claim 15. We were focused solely on from the detecting step. But what's important as well is the following limitations that come after from the detecting step. It says next in the method that you effectively increase a nozzle exit area. And what that does is relieve back pressure on the fan, and it lowers the operating line to increase your stability margin. That's a correcting step there. And what is it correcting for? It's determined you have an undesired stability margin. And then the claim goes on and corrects for it. Well, you have to do a calculation in order to make the correction. As the patent explains, these turbo fans operate... Wait, you're talking about the lowering portion of it? Yes, Your Honor. You're saying you can't do this without a calculation? Correct, Your Honor, because what you've determined in that second step is an Then what the controller is going to do is tell the nozzle exit area, go ahead and increase, release the back pressure on the fan. And what that will do is lower the turbo fan operating line, increasing the turbo fan stability margin. So it's restoring the stability margin so that it's sufficient. The way these fans work in flight, they're obviously highly sophisticated instruments. You have supersonic airflow coming into the fan. Fundamentally, you have to know where that operating point is. Then you calculate a stability margin. If you determine it's undesired, the rest of Claim 15 goes through and says, make that correction. And we submit that when this controller's making such a correction, it's doing quite precisely. It's not doing it simply, I detected a condition that may lead to instability, and I simply react. It has to know how to correct, and it's very precise when it makes that. You're saying it necessarily calculates the difference between the pressure ratio at the fan stability limit line and the pressure ratio at the fan operating point. Yes, Your Honor. Which you're saying has to be done. Has to be done fundamentally, and then if it is straight, if you have an undesired or insufficient stability margin, it's going to correct precisely. That would have been easy enough to write into the patent, wouldn't it? We submit, Your Honor, at least in Figure 3 of the specification, it's clearly shown, and the person of ordinary skill in the art would understand exactly that lowering that fan operating line, you lower your operating point, you're restoring your stability margin. I see that I'm in my rebuttal time now. Why don't we hear from the other side? Thank you. Thank you, Your Honors, and may it please the Court, Brian Ferguson for General Electric. The entire argument the UTC is making is based on a non-existent claim. There is no claim. There is no claim language that requires calculating a stability margin. If there was, this would be a different story. But I gather that their argument is that this is the only way possible to do any of this is to do that calculation. And went throughout when they're talking about the controller and the various inputs and things like that, it necessarily means when you're talking about an undesirable stability margin that it relies on a calculation to get there. What's wrong with that argument? The problem with that argument, Your Honor, is that that is not what is taught in the patent itself. The patent very clearly teaches that undesired stability margins can occur simply from the result of air entering the engine at an angle that is not in line with the engine axis. This is taught. How do they know that that angle of air will create an undesirable stability margin without knowing what the desirable one is and then calculating the difference? That is exactly what this patent is attempting to overcome, is that it was known in the art. It's taught in the background of the invention. It was known in the art that if the air comes into the engine at an undesirable angle, it causes unwanted pressure gradients on the fan. And that alone can cause an undesired stability margin. So there is an embodiment in this patent that teaches all you do, all you need to do, is detect that the air is coming into the engine. Can you give us the line? Absolutely, Your Honor. Tell us where we are in the patent. There are several spots in the patent. But I will start with column one at line 24. And this says, one of the important performance limitations for the fan is the loss in fan stability margin that occurs during aircraft maneuvers in crosswind operating conditions. During those maneuvers or crosswind conditions, the inlet flow, that's the inlet flow of the air, approaches the aircraft inlet in a direction that's not in line with the axis of the engine. That can cause pressure gradients that result in significant pressure distortion entering the fan. That right there talks about this problem of air entering the engine at a direction that is not in line with the axis, which can cause pressure gradients on the fan, which causes loss in fan stability margin. Then, in the summary of the invention, they say this is how we're going to solve this problem. And this is at line 52, 53. In one example, the physical nozzle exit area, that's the exhaust nozzle, is increased at the undesired stability condition in which the air flow into the engine creates this destabilizing pressure gradient. Air comes into the engine in a direction that is not parallel to the axis. It causes pressure gradients on the fan. That results in an undesired stability margin. All you need to do is to detect that and then open the nozzle, which automatically increases your stability margin. What about figure three? Certainly, Your Honor. Figure three, first of all, as the board correctly found, figure three shows no, it's not quantitative in any sense. There's nothing in this patent, there's nothing in figure three, that says how much of a margin is required in order to maintain a sufficient stability margin. And when you look at figure three, it shows an operating point, yes. But nowhere does the specification ever state that in order to determine an undesired stability margin, you have to first calculate the fan operating point. Because what's shown here in figure three is that the nominal fan operating line, which was the one in the middle of the graph, the operating line moves downward when the nozzle area is increased. The whole line moves, not just a point. And that's the whole point of this, is that when that air is coming in into the engine at that undesired angle, you want a better safe than sorry situation. If you know the air is coming in at an angle that's not in line, you want to automatically open the nozzle, because that releases the back pressure and lowers that entire line, not just the point. And when you lower that operating line, you necessarily increase the stability margin, because that is determined by the fan stability limit line, which is the line at which the fan should never operate above. So you're here. This is your stability limit line, the one on top. This is your fan operating line, where the fan actually is. You determine the air is coming into the engine at a wrong angle. Uh-oh. My stability margin will be decreased, so I better open the nozzle and lower this line. That's what the invention is. That is what claim 15 covers, to a T. Claim 15 is very clear. And that's exactly what your friend was referring to, lowering limitation. That's exactly what you're talking about. That's exactly what it teaches. It teaches that, in fact, if you look at claim, if you look at figure 3, your honor, at the upper right of figure 3, it says that the fan stability limit decreases with increasing inlet flow distortion and reduces the stability margin. Well, that is increasing inlet flow distortion is what's caused by that air flow entering the engine at an improper direction. All you need to do is detect that. When that is detected, you know that the stability margin has now lessened because of the pressure gradient on the fan. So you just open up the nozzle, release the back pressure, down goes the line. But the detecting process is that the pilot doesn't do that by looking at the air flows, all done by some sort of technology. Correct, it's a controller. So you have to have sensors. You do. And so those sensors have to tell the controller specific numbers of what's going on so that the controller knows or is set to say, when the number goes this way, I got to go that way. Well, your honor. Otherwise, how does the machine know? Because there is a sensor located. In fact, this is at column 3 at the top of column 4. In one example, a sensing device is used to determine the direction of the air flow into the engine relative to the axis. The sensing device is located on the airframe and is used by the controller to determine the angle of attack. Slides up. So that's only detecting that the air that's coming into the engine is at an improper angle. That's all. It's not calculating a fan operating point. It doesn't need to do that. That's the whole point of the invention. They wanted to cover the situation where it's better safe than sorry. If you know the air is coming into the engine at an improper angle, you don't need to take those precious milliseconds to then calculate what the actual operating point is, determine if your stability margin is enough, and only then open up the nozzle to increase the margin. You just detect that the air is coming in at the wrong angle. We're in a situation that could cause unstable operating conditions, so we're going to lower the line. Period. Claim 15 says specifically that you detect the undesired stability margin from the detecting step. Determine it from the detecting step. So undesired stability margin is determined by detecting at least one of, and it lists those four things, and one of those things is the airflow direction. So as the board properly said, the plain language of this claim says that you can determine the undesired stability margin from detecting the airflow direction. Period. Now, it may be the case that for other parameters, some calculation may be necessary. It may be, Your Honor, but the way that this claim is written, if they were asserting this claim in court, all they would need to show is that somebody was determining or detecting the airflow direction, and then opening the fan nozzle to increase the stability margin. That would infringe that claim. Well, then they're also stuck with that will be proven invalid, that claim, if we can show in the prior art that such an invention had already existed, and that's exactly what we showed. Harner and Harloff, the two primary references, both teach opening the fan nozzle in order to lower your operating line. So the way that UTC reads Claim 15 is to rewrite it by requiring first calculating a stability margin based on at least one of those, and according to my colleague, perhaps more things. But that's not the way Claim 15 is written. Their claim construction just cannot be reconciled with Claim 15. Unless, I know it's been a long morning for everybody, unless you have any further questions, I'm happy to see the rest of my time. I think we're fine, thank you. Thank you, Your Honor. I want to pick up exactly where counsel left off, and GE wrote this in their brief. They framed the question, quote, in other words, do the claims require determining the fan operating point and calculating a stability margin, as UTC argues, or do the claims reasonably cover embodiments where it's not necessary to calculate the actual stability margin? Claim 15 doesn't cover those embodiments. Where are you reading from in the red brief? This is GE's brief, bottom of 40 and top of 41. And Claim 15 doesn't cover those embodiments. It very clearly says you determine the undesired turbofan stability margin. You have to make that determination. We're left at a claim construction and an argument that is tantamount to, if you don't know what the stability margin is, how can you determine that it's undesired? Because in their construction, no one's ever even determined or calculated what the stability margin is. The second and last point I want to address is this argument that the board used as purposes for their construction and that GE makes here, which is simply basing Claim 15 and its determination on airflow direction alone. And counsel said, if the airflow is coming in not parallel to the inlet axis, you have an undesired stability margin. They framed this in their brief simply as these if-then scenarios. And that simply can't be the case. When an airplane is in climb and it's ascending, obviously the air is not entering parallel to the inlet axis. That's what the board relied on. That's what GE argues here. And that's just a sensing device that, as counsel said, at the bottom of column three, top of column four, that goes into the controller. The controller makes a calculation. It's a computer. It calculates stability margin. If there are no further questions. Thank you, Bruce.  Thank you.